IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WYNONA BRYANT-WILLIAMS,        §
   Plaintiff                   §
                               §
vs.                            §      NO. 4-03-CV-00046 GH
                               §
PHILANDER SMITH COLLEGE,       §
TRUDIE KIBBE REED AND          §
RAPHAEL LEWIS,                 §
IN THEIR OFFICIAL AND          §      This case assigned to District Judge _Howard_
PERSONAL CAPACITIES,           §      and to Magistrate Judge _Forster_
   Defendants                  §

## PLAINTIFF'S ORIGINAL COMPLAINT

Wynona Bryant-Williams, Plaintiff, complains against Philander Smith College, Trudie Kibbie Reed, in her official and personal capacity, and Raphael Lewis, in his official and personal capacity, and states and alleges:

### A. Preliminary Statement

1.    This action arises under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et. seq. (Title VII). The Plaintiff, Wynona Bryant-Williams, is seeking damages to redress the deprivation of her rights from discriminatory employment practices on the basis of sex and age by Defendants and to redress the deprivation of her First Amendment rights and retaliation for exercising them.

### B. Parties

2.    Plaintiff Wynona Bryant-Williams is an individual and a citizen and resident of Little Rock, Pulaski County, Arkansas.

3.    Defendant Philander Smith College is a non-profit corporation incorporated in the State of Arkansas and located in Little Rock, Pulaski County,

Arkansas, and can be served through its agent for service of process, George Bryant, 812 West 13th Street, Little Rock, Arkansas 72202.

4.      Upon information and belief, Defendant Trudie Kibbe Reed, President of Philander Smith College, is a citizen and resident of Little Rock, Pulaski County, Arkansas.

5.      Defendant Raphael Lewis, who at all relevant times was the Vice-President for Academic Affairs of Philander Smith College, is a citizen and resident of Little Rock, Pulaski County, Arkansas.

### C. Jurisdiction and Venue

6.      The jurisdiction of this Court is proper under Title VII as federal question jurisdiction.

7.      Venue is proper in that the acts complained of herein occurred in this judicial district.

### D. Procedure

8.      Plaintiff has complied with the necessary prerequisites to bring this action. Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC), and was given permission to file suit.  Plaintiff brings this action within the ninety-day (90) period allowed to institute such an action.

### E. Facts

9.      Plaintiff Wynona Bryant-Williams (Bryant-Williams) was employed by Defendant College as the Director of the Black Family Studies Program.  Bryant-Williams held this position for approximately three years until she received a termination

letter from Defendant Trudie Kibbe Reed (Reed).  The letter was dated February 20, 2002, and Bryant-Williams received it shortly thereafter.

10.    The letter lists several factors, all of which purportedly "compelled" Reed to take a different approach to the Black Family Studies Program.  The factors listed included, among others, a small enrollment in the program and that the program does not lead to a degree.  In the letter, Reed misled Bryant-Williams by stating that certain funding for the program would or could no longer be received or applied for.  These factors are nothing more than fabricated attempts to justify termination of Bryant-Williams' employment with the university.

11.    Upon information and belief, Reed became angered at Bryant-Williams when Bryant-Williams made a comment in August 2001 at the Black Expo Awards Banquet.  The comment was recognized by all those present to be humorous, except for Reed.  The comment was protected speech under Bryant-Williams' First Amendment rights.

12. Approximately two weeks later, a coworker of Bryant-Williams informed her that Reed was trying to find a way to terminate Bryant-Williams because of the comment at the banquet.

13.    Bryant-Williams met with Reed in November 2001, wherein Reed pushed aside the matter the two were to discuss and verbally attacked Bryant-Williams concerning her earlier comment.  After Reed's tirade, she told Bryant-Williams that she was not happy with what Bryant-Williams had done with the Black Family Studies Program.

14.   The secret scheme orchestrated by Reed to have Bryant-Williams removed as Director started sometime in the fall of 2001.

15.   In the early months of 2002, numerous secret meetings were held discussing the future of the Black Family Studies Program. These meetings were kept from Bryant-Williams, even though Bryant-Williams was the Director of the program. When Bryant-Williams caught on to fact that numerous changes to the program were taking place, she naturally asked to be included in the discussions that would be affecting her program. It was at this time when Reed terminated Bryant-Williams. Upon information and belief, Reed was denying Bryant-Williams access to the discussions concerning the program's changes so Reed could figure out how best to terminate Bryant-Williams. Nevertheless, the reasons given for Bryant-Williams' termination by Reed are clearly conjecture and pretext.

16.   During the entirety of her employment with the Defendant College, Dr. Bryant-Williams received annual performance evaluations from the Vice-President for Academic Affairs. All of these reviews were positive. Throughout her appointment at the Defendant College, Plaintiff received nothing but support and positive reviews from the academic dean.

17.   Despite the positive evaluations, Plaintiff received disparate treatment during her tenure as director of the Black Family Studies Program. Specifically, Plaintiff experienced a constant and continuing series of acts of harassment and disparate treatment including, but not limited to, the following:

   a.   Plaintiff's program, the Black Family Studies Program, was not re-submitted for possible Title III funding after three years of funding, and Defendant Reed represented that Plaintiff's program could not be resubmitted because it was not a "start-up" program, while

numerous other programs at Defendant College that were not "start-up" programs were re-submitted for continued Title III funding and had been re-submitted on numerous occasions, and new programs were submitted for funding, and the directors of those programs are males and/or under the age of forty-five.

b.    During the fall of 2001, as Plaintiff and others were a part of a planning team for an honors academy at Defendant College, Plaintiff's payment for work on the honors project was withheld or delayed with respect to Plaintiff's colleagues working on the same project who were, upon information and belief, under the age of forty-five.

c.    During her term of employment, Defendants repeatedly excluded Plaintiff from participation from the future planning of the Black Family Studies Program even though she was the director of that program while promoting participation in planning the future of programs that are headed by directors who are male and/or under the age of forty-five.

d.    After her termination, Plaintiff was replaced with a male under the age of forty-five.

e.    During her employment, the classes to be offered during the spring semester of 2002 in the Black Family Studies Program were left out of the spring schedule, perhaps intentionally, even though classes were to be taught in that program during that semester, although classes in programs headed by directors who are male and/or under the age of forty-five were not omitted from the schedule.

f.    Plaintiff's selection to participate in Defendant College's honors college was repeatedly questioned by Defendant Lewis, unlike the other professors selected to participate who were, upon information and belief, under the age of forty-five.

g.    An incident report filed against Plaintiff was taken to a specially appointed committee for investigation even though the complainant stated that she never intended for the matter to go that far, unlike incident reports filed against other faculty members who were male and/or under the age of forty-five.

18.    In the February 20, 2002, letter, Defendant Reed informed Plaintiff Bryant-

Williams that the Black Family Studies Program would be reconfigured and that her

position would be eliminated at the conclusion of her present contract, that is, August 31, 2002.

19.    Plaintiff has conscientiously pursued all available administrative remedies within the Defendant College.  Plaintiff presented documentation to the Defendant College's Board of Trustees and filed grievances against Defendants Reed and Lewis. The Defendant College's Board of Trustees informed Plaintiff that they would hear the grievances at their May 2002 meeting, but that did not happen.  No grievance hearing ever took place.

20.    On or about August 22, 2002, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

21.    No earlier than October 24, 2002, Plaintiff received a dismissal and Notice of Rights from the Equal Employment Opportunity Commission.

22.    As a direct and proximately result of the acts of the Defendants, Plaintiff Bryant-Williams has suffered extreme damage to her professional reputation with concurrent out-of-pocket expenses and economic losses in the past and which will continue in the future.  Plaintiff has also been forced to incur other out-of-pocket expenses and economic losses and will continue to incur such expenses and losses in the future, and has lost benefits, income, earnings, and profits in the past and will continue to lose income, earnings, and profits in the future, has lost earning capacity, has already sustained and experienced emotional pain, suffering, embarrassment, and humiliation, and will continue to experience this emotional pain and suffering in the future, all in an amount in excess of that required for federal jurisdiction in diversity cases.

## First Cause of Action:  Gender Discrimination in Violation of Title VII and the Arkansas Civil Rights Act of 1993

23.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

24.    Plaintiff Bryant-Williams is a female, and as such is a member of a protected class, to wit, the class of females.

25.    Defendants' conduct and comments, which occurred almost daily, were sufficiently severe to unreasonably interfere with Plaintiff's work performance.

26.    Defendants' conduct was sufficiently severe that it created an intimidating, hostile, and offensive work environment, and this was known to all Defendants.

27.    The actions of the Defendant College were motivated by Plaintiff's gender. Plaintiff would not have been the target of organized harassment and termination but for this protected characteristic.  This discrimination was exacerbated by the Plaintiff's membership of one other protected class, to wit, the class of persons over the age of forty-five.

28.    These acts by Defendant College are a direct cause of the injuries and damages sustained by Plaintiff, as more specifically described herein.

## Second Cause of Action:  Retaliation for and Interference with Exercise of First Amendment Rights and Opposition to Discrimination

29.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

30.    Plaintiff exercised her rights under Title VII and the First Amendment to express her concerns about her treatment by Defendant Reed, particularly through

Plaintiff's filing of a grievance against Defendant Reed, and to oppose the harassment and discrimination that she encountered.

31.     All relevant actions of the Defendants were actions under color of state law.

32.     The actions of Defendants were motivated by Plaintiff's exercise of her First Amendment and Title VII rights in a manner critical of the Defendants. Plaintiff would not have been the target of organized and intensified harassment and ultimately termination but for her exercise of her First Amendment and Title VII rights in this manner.

33.     These acts by the Defendants are a direct cause of the injuries and damages sustained by Plaintiff, as more specifically described herein.

### Third Cause of Action:  Wrongful Discharge

34.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

35.     Plaintiff's discharge violated the public policy of the State of Arkansas.

36.     The acts of the Defendants are the direct cause of the injuries and damages sustained by Plaintiff, as more specifically described herein.

### Fourth Cause of Action:  Promissory Estoppel

37.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

38.     Defendants made numerous express and implied promises to Plaintiff, including but not limited to promises that:

> a.      Plaintiff's program would eventually be moved out of Title
> III funding and into the General Fund;

 

    b.    Defendant Reed and/or Defendant College would raise funds through a fundraising campaign to fund Plaintiff's Black Family Studies Program;

    c.    Plaintiff's salary would be raised if Plaintiff stayed at Defendant College for two years; and

    d.    Plaintiff's program would be treated as an interdisciplinary program in academic scope for purposes of teaching assistance within Plaintiff's program.

39.    Defendants should reasonably have expected, and did in fact expect, their promises to induce action by the Plaintiff.

40.    Defendants' promises did in fact induce reliance by Plaintiff.

41.    Injustice may be avoided only by enforcing Defendants' promises. Enforcement of Defendants' promises is the only manner in which Plaintiff will avoid being penalized for the misconduct of Defendants.

42.    As a direct and proximate result of Defendants' breach of these promises, Plaintiff has been damaged as described more specifically herein.

### Fifth Cause of Action:  Constructive Fraud

43.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

44.    Defendants represented to Plaintiff that:

    a.    Plaintiff's program would eventually be moved out of Title III funding and into the General Fund;

    b.    Defendant Reed and/or Defendant College would raise funds through a fundraising campaign to fund Plaintiff's Black Family Studies Program;

    c.    Plaintiff's salary would be raised if Plaintiff stayed at Defendant College for two years; and

       d.    Plaintiff's program would be treated as an interdisciplinary program in academic scope for purposes of teaching assistance within Plaintiff's program.

45.    Defendants have breached a legal and equitable duty to perform as promised, and have deceived Plaintiff, and are therefore guilty of constructive fraud and unconscionable conduct.

46.    As a direct and proximate result of Defendants' constructive fraud, Plaintiff has been damaged as more specifically described herein.

**Sixth Cause of Acton:  Defamation Per Se and Per Quod**

47.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

48.    Defendants made defamatory statements of fact concerning Plaintiff, including, but not limited to the following:

       a.    That Plaintiff had misappropriated funds;

       b.    That Plaintiff would run the honors program through her involvement in it; and

       c.    That Plaintiff was dishonest.

49.    The aforementioned defamatory statements made by Defendants identified and referred to Plaintiff by description and name, and were "of and concerning" Plaintiff.

50.    The aforementioned defamatory statements made by Defendants were false and were wholly without reasonable factual basis.

51.    Defendants published these statements by making them to a third party other than the Plaintiff.

52.     Defendants intentionally published the aforementioned defamatory statements.

53.     Defendants negligently failed to investigate or ascertain the truth or falsity of the aforementioned defamatory statements when they made these statements.

54.     These acts of Defendants are the direct and proximate cause of the injuries and damages sustained by the Plaintiff, as is more specifically described herein.

### Seventh Cause of Action:  Defamation Per Se and Per Quod

55.     All preceding paragraphs with the exception of paragraph 53 are hereby incorporated by reference as if fully set forth herein.

56.     Defendants made the aforementioned defamatory statements with knowledge of their falsity, or with reckless disregard for their truth or falsity.

57.     These acts of Defendants are the direct and proximate cause of the injuries and damages sustained by the Plaintiff, as is more specifically described herein.

### Eighth Cause of Action:  False Light Invasion of Privacy

58.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

59.     Defendants made statements of fact concerning Plaintiff that portrayed Plaintiff in a false light, including, but not limited to the following:

a.     That Plaintiff had misappropriated funds;

b.     That Plaintiff would run the honors program through her involvement in it; and

c.     That Plaintiff was dishonest.

60.     The aforementioned defamatory statements made by Defendants were false and were wholly without reasonable factual basis.

61.   The aforementioned statements had the effect of portraying Plaintiff in a false light.

62.   The false light in which Plaintiff was placed is highly offensive to a reasonable person.

63.   Defendants made the aforementioned defamatory statements with knowledge of, or with reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed.

64.   These acts of Defendants are the direct and proximate cause of the injuries and damages sustained by the Plaintiff, as is more specifically described herein.

### Jury Demand

65.   The Plaintiff hereby requests a jury trial.

WHEREFORE, the Plaintiff prays this Court:

a.   Grant the Plaintiff backpay for lost wages and benefits;

b.   Grant the Plaintiff reinstatement to her former position or an equivalent position, or front pay and all other compensation for lost wages and benefits in lieu thereof;

a.   Grant the Plaintiff compensatory damages in an amount sufficient to compensate her for her losses, and in excess of the amount necessary for federal jurisdiction in diversity cases;

b.   Grant the Plaintiff punitive damages in an amount sufficient to deter Defendants' and its agents from similar misconduct;

c.   Award the Plaintiff her reasonable attorneys' fees in this cause;

d.   Award the Plaintiff her costs herein;

g.   Award the Plaintiff prejudgment and post-judgment interest;

h.   Grant the Plaintiff injunctive relief enjoining the Defendants from further violations, and declaratory relief declaring Defendants' previous actions to be violations of the law, and

i.      Grant the Plaintiff all other proper relief.

Respectfully submitted,

**PATTON, TIDWELL & SCHROEDER, L.L.P.**
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
Telephone:  903/792-7080
Facsimile  :  903/792-8233

Christie Gunter Adams
Arkansas Bar No. 97050

**ATTORNEYS FOR PLAINTIFF**

## VERIFICATION

I, the undersigned, hereby state on oath that I have read the above and foregoing Complaint, and that the facts and statements contained herein are true and correct to the best of my knowledge and belief.

_Wynona Bryant-Williams_
Wynona Bryant-Williams

SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public, on this 22 day of January, 2003.

_Karla Markle_
Notary Public
My Commission Expires: July 26, 2005

"OFFICIAL SEAL"
KARLA HARRIS MARKLE
NOTARY PUBLIC • ARKANSAS
MILLER COUNTY

14